Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ruben Castillo | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 3975 | **DATE** | 9/4/2003 |
| **CASE TITLE** | Ruby Warren vs. Ronald Peterson | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. This Court reverses the orders of the bankruptcy court permitting Peterson to retain a real estate broker and authorizing the sale of the Warren's residence. Judgment is entered in favor of the Appellant Ruby Warren and against the Appellee Ronald Peterson. This case is remanded to the bankruptcy court for further proceedings consistent with this opinion.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | | Document Number |
|---|---|---|---|---|---|
| | No notices required, advised in open court. | | | number of notices | |
| | No notices required. | | | SEP 0 5 2003 | |
| | Notices mailed by judge's staff. | | | date docketed | 5 |
| | Notified counsel by telephone. | | | | |
| ✓ | Docketing to mail notices. | | | docketing deputy initials | |
| ✓ | Mail AO 450 form. | | U.S. DISTRICT COURT CLERK | | |
| | Copy to judge/magistrate judge. | | 03 SEP -4 PM 2:21 | date mailed notice | |
| RO | courtroom deputy's initials | | Date/time received in central Clerk's Office | mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

DOCKETED SEP 0 5 2003

| | |
|---|---|
| RUBY WARREN, | |
| Appellant, | |
| v. | No. 03 C 3975 |
| | Judge Ruben Castillo |
| RONALD PETERSON, | |
| Appellee. | |

## MEMORANDUM OPINION AND ORDER

Ruby Warren ("Warren") appeals the bankruptcy court's decision to permit the trustee of the bankruptcy estate, appellee Ronald Peterson ("Peterson"), to sell her residence. The basis of her appeal is that 11 U.S.C. § 348(f)(1)(B) precludes Peterson from selling her residence because the order confirming her chapter 13 bankruptcy plan constituted an implicit valuation of her residence. In response, Peterson asserts that the confirmation order is not an implicit valuation and that, even if it is, the order is not binding after Warren converted her case to chapter 7. Additionally, Peterson asserts that Warren converted her case to chapter 7 in bad faith. For the reasons set out herein, this Court holds that an order confirming a chapter 13 bankruptcy plan is an implicit valuation of the debtor's scheduled property and that 11 U.S.C. § 348(1)(B) mandates that the bankruptcy court apply this valuation in the converted case. Thus, this Court reverses the bankruptcy court's orders permitting Peterson to retain a real estate broker and to sell Warren's residence and remands the case to the bankruptcy court. (R. 1, Bankr. R. on Appeal, Order to Retain Counsel; Order Authorizing Sale; Order Denying Appellant's Mot. to Reconsider.) We



further note that the bankruptcy court is the proper forum to make the factual determination of whether Warren converted her case to chapter 7 in bad faith.

## RELEVANT FACTS

On August 9, 1997, Warren filed a chapter 13 bankruptcy petition. (*Id.*, Chapter 13 Pet.) Her proposed bankruptcy plan provided for full payment of both secured and unsecured creditors. (*Id.*, Appellant's Chapter 13 Plan.) Warren's assets included her residence at 3424 South Giles Avenue, which she valued at $40,000, and personal property consisting primarily of two vehicles, which she valued at $28,875. (*Id.*, Chapter 13 Pet. Schedules). Warren's liabilities included a $36,239 secured claim against her home, $36,129 in secured claims against her vehicles, and $15,280 in unsecured credit card debt. (*Id.*) Warren also claimed a $7500 homestead exemption for her residence under 735 ILCS § 5/12-901. (*Id.*) On September 22, 1997, the bankruptcy court confirmed a chapter 13 plan that provided full repayment to Warren's secured creditors and partial repayment (50%) to Warren's unsecured creditors. (*Id.*, Order Confirming Chapter 13 Plan.) On July 19, 2002, Warren converted her chapter 13 case to a chapter 7 case. (*Id.*, Notice of Conversion.)

The present appeal stems from three decisions made by the bankruptcy court after Warren converted her case to chapter 7. On March 31, 2003, Peterson filed a motion to retain a real estate broker, which the bankruptcy court granted on April 10, 2003. (*Id.*, Appellee's Mot. to Retain Counsel; Order to Retain Counsel.) On April 1, 2003, Peterson filed a motion to sell Warren's residence, which the bankruptcy court granted on April 24, 2003. (*Id.*, Appellee's Mot. to Sell Property; Order Authorizing Sale.) On April 21, 2003, Warren filed a motion to reconsider, which the bankruptcy court denied on April 29, 2003. (*Id.*, Appellant's Mot. to

2

Reconsider; Order Denying Appellant's Mot. to Reconsider.) On May 9, 2003, Warren appealed all three decisions.

## LEGAL STANDARDS

This Court has jurisdiction over the appeal pursuant to 28 U.S.C. § 158. We review the bankruptcy court's factual findings under a "clearly erroneous" standard and its conclusions of law *de novo*. *In re Smith*, 286 F.3d 461, 464-65 (7th Cir. 2002).

## ANALYSIS

This case concerns the proper application of 11 U.S.C. § 348(f), which governs the effect of converting bankruptcy cases from one chapter to a different chapter on the valuations of property in the bankruptcy estate. The statute states:

> (f) (1) Except as provided in paragraph (2), when a case under chapter 13 of this title is converted to a case under another chapter under this title–
>
> > (A) property of the estate in the converted case shall consist of property of the estate, as of the date of filing of the petition, that remains in the possession of or is under the control of the debtor on the date of conversion; and
> >
> > (B) valuations of property and of allowed secured claims in the chapter 13 case shall apply in the converted case, with allowed secured claims reduced to the extent that they have been paid in accordance with the chapter 13 plan.
>
> (2) If the debtor converts a case under chapter 13 of this title to a case under another chapter under this title in bad faith, the property in the converted case shall consist of the property of the estate as of the date of conversion.

11 U.S.C. § 348(f). Congress added this section to the bankruptcy code in the Bankruptcy Reform Act of 1994 to provide debtors with an additional incentive to reorganize under chapter 13 rather than to immediately liquidate their assets under chapter 7. The legislative history provides the following example of section 348(f)'s underlying purpose:

3

> For example, a debtor who had $10,000 equity in a home at the beginning of the case, in a State with a $10,000 homestead exemption, would have to be counseled concerning the risk that after he or she had paid off a $10,000 second mortgage in the chapter 13 case, creating $10,000 in equity, there would be a risk that the home could be lost if the case were converted to chapter 7 (which can occur involuntarily). If all of the debtor's property at the time of conversion is property of the chapter 7 estate, the trustee would sell the home, to realize the $10,000 in equity for the unsecured creditors and the debtor would lose the home.

H.R. Rep. No. 103-835 at 57 (1994), *reprinted in* 1994 U.S.C.C.A.N. 3340, 3366. This section also serves to promote judicial efficiency "by preventing relitigation of valuation issues." 3 Collier on Bankruptcy § 348.01 (Matthew Bender 15th ed. rev. 2003).

We must answer two questions in order to resolve this case: (1) whether the confirmation of the chapter 13 bankruptcy plan constitutes an implicit valuation of a debtor's scheduled property that must be applied in the converted chapter 7 case; and (2) whether Warren converted her chapter 13 bankruptcy case to chapter 7 in bad faith.

## I.  Valuation under 11 U.S.C. § 348(f)(1)(B)

The controlling statute clearly states that "valuations of property and of allowed secured claims in the chapter 13 case shall apply in the converted case." 11 U.S.C. § 348(f)(1)(B). The threshold question is whether there was a valuation of Warren's residence in her chapter 13 case. Warren valued her property at $40,000 in her bankruptcy petition, but the bankruptcy court never explicitly valued her property. Several other courts, however, have held that confirmation of a bankruptcy plan is an implicit valuation of the property in the bankruptcy estate. *See In re Slack*, 290 B.R. 282, 287 (Bankr. D.N.J. 2003) (holding that "[e]ven though the court made no specific finding of value, when the chapter 13 plan was confirmed (without objection) there was an implicit finding that the scheduled value, $43,000, was proper"); *In re Wegner*, 243 B.R. 731,

4

734 n.1 (Bankr. D. Neb. 2000) (using the scheduled value of debtor's residence as the valuation of the residence in the converted chapter 7 case); *In re Page*, 250 B.R. 465, 466 (Bankr. D.N.H. 2000) (holding that reliance "on the value of the property as scheduled in the confirmation process is, in fact, the valuation"); *In re Kuhlman*, 254 B.R. 755, 757 (Bankr. N.D. Cal. 2000) (stating that "courts are already interpreting the statute liberally by considering confirmation of a plan to be an implicit valuation").

This Court holds that an order confirming a chapter 13 bankruptcy plan is an implicit valuation of the scheduled property. Recognizing implicit valuations is consistent with both the chapter 13 confirmation procedures and the congressional intent underlying section 348(f). Before confirming a chapter 13 bankruptcy plan, the bankruptcy court must find that all of the provisions of 11 U.S.C. § 1325(a) are satisfied. One of these provisions requires the bankruptcy court to find that "the value, as of the effective date of the plan, of property to be distributed under the plan on account of each allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under chapter 7 of this title on such date." 11 U.S.C. § 1325(a)(4). Compliance with this provision requires the bankruptcy court to rely on the scheduled values of the debtor's property in order to determine the amount unsecured creditors would be paid if the bankruptcy estate were liquidated under chapter 7. Furthermore, the unsecured creditors, who risk receiving less than full payment, must object to the scheduled values before confirmation if they believe that the values are inaccurate. *See In re Duggins*, 263 B.R. 233, 236 (Bankr. C.D. Ill. 2001) (explaining the role of creditor objections during the confirmation process). Since the scheduled values are scrutinized by both the bankruptcy court and the creditors before a chapter 13 plan is confirmed, sufficient

procedural protections exist to ensure that debtors are not deliberately undervaluing their property.

Additionally, treating an order confirming a bankruptcy plan as an implicit valuation of the property within the bankruptcy estate is consistent with the congressional intent underlying section 348(f). Congress sought to encourage debtors to reorganize their affairs through chapter 13 rather than to immediately liquidate their property under chapter 7.[1] Section 348(f) was added to the bankruptcy code to protect debtors such as Warren from the risk of losing additional property if they seek to reorganize under chapter 13. "Congress recently amended § 348(f) to further assure that debtors will not suffer detrimental consequences if they elect to file a Chapter 13 and later convert to Chapter 7 in good faith." *Wegner*, 243 B.R. at 734. Thus, recognizing implicit valuations is consistent with congressional intent as it encourages debtors to file chapter 13.

Finally, treating orders confirming a bankruptcy plan as implicit valuations serves the interest of judicial economy. Establishing the valuation of property at an early stage in the proceedings ensures both stability and finality. Valuations need not be re-examined if the case converts from chapter 13 to chapter 7. Determining the present value of property, such as real estate, is already a complicated issue, and calculating the historic value of property is even more

---

[1] The earlier-quoted example in the legislative history is highly instructive in this case. *See* H.R. Rep. No. 103-835 at 57 (1994), *reprinted in* 1994 U.S.C.C.A.N. 3340, 3366. Warren, like the debtor in the example, had no equity in her residence when her bankruptcy plan was confirmed (at least according to her scheduled values). Warren's case, like the debtor's, was subsequently converted to chapter 7. And finally, at the time of conversion, Warren, like the debtor, probably had equity in her residence (because of appreciation and payments made against the secured claims) that would permit the trustee to sell her residence to capture the equity. Section 348(f) was adopted to ensure that property, such as Warren's residence, would not be liquidated as a result of converting to chapter 7.

6

complicated. Holding that the confirmation of the chapter 13 plan constitutes an implicit valuations under section 348(f) simplifies this process by establishing valuations at the start of the bankruptcy proceeding. Were this Court to reject implicit valuations, debtors would be required to request explicit judicial valuations of all of their scheduled property before confirmation—injecting considerably more time and expense into the process—in order to rely on the protection provided by section 348(f).

Peterson also argues that the implicit valuation is not binding because Warren abandoned her chapter 13 bankruptcy plan when she converted her case to chapter 7. (R. 3, Appellee's Answer at 7.) But Peterson's cases are inapposite because none of them address the clear mandate of section 348(f)(1)(B): "valuations of property and of allowed secured claims in the chapter 13 case *shall apply in the converted case.*" 11 U.S.C. § 348(f)(1)(B) (emphasis added). Indeed, nearly all of the cases cited by Peterson were decided before the Bankruptcy Reform Act of 1994, which, among other things, enacted section 348(f)(1)(B). Thus, they are wholly inapplicable to the present case. *E.g., Smith v. No. 2 Galesburg Crown Fin. Corp.*, 615 F.2d 407 (7th Cir. 1980); *In re Fisher*, 203 B.R. 958 (N.D. Ill. 1997) (case filed before the enactment of the Bankruptcy Reform Act of 1994); *Elliot v. ITT Corp.*, 150 B.R. 36 (N.D. Ill. 1992); *In re Schaffer*, 48 B.R. 952 (Bankr. N.D. Ohio 1985); *In re Doyle*, 11 B.R. 110 (Bankr. E.D. Pa. 1981).

Peterson correctly notes that the Seventh Circuit in *Smith* held that the valuation of a creditor's security interest was not binding after a debtor converted from chapter 13 to chapter 7. *Smith*, 615 F.2d at 410-11. This case, however, was decided well before the Bankruptcy Reform Act of 1994, so it is no longer controlling. *See In re Archie*, 240 B.R. 425, 428-29 (Bankr. S.D.

7

Ala. 1999) (noting that *Smith* was based on broad policy principles due to legal uncertainties which were subsequently addressed in the 1994 amendments to the bankruptcy code). Additionally, as *Smith* concerned the valuations of a creditor's security interests, rather than the valuation of the debtor's property, it is factually distinguishable as well. *Smith*, 615 F.2d at 410-11. The only case Peterson cites that even discusses section 348(f) is *Fisher*, but this case was filed before the enactment of the Bankruptcy Reform Act of 1994 and the discussion of section 348(f) was included merely to aid in the interpretation of entirely different code sections. *Fisher*, 203 B.R. at 963. Finally, neither of the cases decided after the passage of the Bankruptcy Reform Act of 1994 discussed section 348(f). *In re Harvey*, 213 F.3d 318 (7th Cir. 2000); *In re Duggins*, 263 B.R. 233 (Bankr. C.D. Ill. 2001).[2]

In conclusion, we hold that the bankruptcy court's order confirming the chapter 13 plan was an implicit valuation of the debtor's property and that section 348(f)(1)(B) requires that this valuation be applied in the converted chapter 7 case.

## II. Bad Faith

Peterson also argues that Warren converted to chapter 7 in bad faith. Section 348(f)(2) provides that "if the debtor converts a case under chapter 13 of this title to a case under another chapter under this title in bad faith, the property in the converted case shall consist of the

---

[2] In any event, both cases held that collateral attacks on a confirmed plan are not permitted because the creditors had an opportunity to object prior to confirmation. *See In re Harvey*, 213 F.3d at 322 (stating that "[f]orcing parties to raise concerns about the meaning of Chapter 13 filings at the original confirmation proceedings does not impose an unreasonable burden on bankruptcy participants" and that "it is perfectly reasonable to expect interested creditors to review the terms of a proposed plan and object if the terms are unacceptable, vague, or ambiguous"); *In re Duggins*, 263 B.R. at 244 (holding that "[i]n order to preserve an objection to a plan's value, the creditor must object to confirmation of the plan").

8

property of the estate as of the date of conversion." 11 U.S.C. § 348(f)(2). Bad faith is not defined in the code nor has the term as used in section 348(f)(2) been interpreted by any court in this jurisdiction. In *In re Siegfried*, 219 B.R. 581, 585 (Bankr. D. Colo. 2001), the bankruptcy court defined bad faith by referring to the term "good faith" in 11 U.S.C. § 1325(a)(3). This Court agrees that the term should be interpreted consistently with existing interpretations of good faith. *See In re Love*, 657 F.2d 1350, 1357 (7th Cir. 1992) (stating that the "focus of the good faith inquiry under both Section 1307 and Section 1325 is often whether the filing is fundamentally fair to creditors and, more generally, is the filing fundamentally fair in a manner that complies with the spirit of the Bankruptcy Code's provisions").

The Seventh Circuit explained in *In re Love* that good faith is determined by looking at the totality of the circumstances and that the bankruptcy court is the proper court to make such a fact-based determination:

> In evaluating good faith necessary for the confirmation of a Chapter 13 plan, this court has refused to adopt a specific test or definition of good faith. Instead, this court has held that good faith is a term incapable of precise definition, and, therefore, the good faith inquiry is a fact intensive determination better left to the discretion of the bankruptcy court. As such, we have directed the bankruptcy courts to look at the totality of circumstances and, thereby, make good faith determinations on a case-by-case basis. The good faith determination with regard to the filing of a Chapter 13 petition is also a fact intensive inquiry to be determined by looking at the totality of circumstances.

*Id.* at 1355 (citations omitted). The Seventh Circuit also provided a non-exhaustive list of the factors the bankruptcy court should apply:

> the nature of the debt, including the question of whether the debt would be nondischargeable in a Chapter 7 proceeding; the timing of the petition; how the debt arose; the debtor's motive in filing the petition; how the debtor's actions affected creditors; the debtor's treatment of creditors both before and after the petition was

9

filed; and whether the debtor has been forthcoming with the bankruptcy court and the creditors.

*Id.* at 1357; *see also Smith*, 286 F.3d at 466.

The totality of the circumstances test is the appropriate test to determine whether a party acted in bad faith. This Court is not able to determine whether Warren converted her case in bad faith because this is a factual determination that was not addressed by the bankruptcy court. That being said, however, the record before this Court provides no evidence that Warren converted her case in bad faith. Peterson's bad faith argument is premised on the assumption that Warren intentionally undervalued her residence in her chapter 13 petition with the intention of subsequently converting her case to chapter 7 to prevent the chapter 7 trustee from selling her residence. The record not only fails to support this argument, but tends to dispute it. First, Warren's residence is within the range of property values provided to this Court by Peterson. (R. 3, Appellee's Answer, App. B.) Second, Warren converted her case nearly five years after she filed for bankruptcy. The delay between filing and conversion strongly implies that Warren did not intend to convert her case to chapter 7 when she filed her chapter 13 petition. Nevertheless, as noted above, we are not in the best position to address this factually intensive question. Therefore, the bankruptcy court may revisit this issue on remand.

## CONCLUSION

For the reasons stated above, this Court reverses the orders of the bankruptcy court permitting Peterson to retain a real estate broker and authorizing the sale of Warren's residence. (R. 1, Bankr. R. on Appeal, Order to Retain Counsel; Order Authorizing Sale; Order Denying Appellant's Mot. to Reconsider.) The Clerk of this Court is instructed to enter judgment,

10

pursuant to Fed. R. Civ. P. 58, in favor of Appellant Ruby Warren and against Appellee Ronald Peterman. The case is remanded to the bankruptcy court for further proceedings consistent with this opinion.

ENTERED: _____
Judge Ruben Castillo
United States District Court

**Dated: September 4, 2003**